701 F.2d 889
 ORIENTAL IMPORTS AND EXPORTS, INC., a Florida corporation,
Plaintiff-Appellee, Cross-Appellant,
v.
MADURO & CURIEL'S BANK, N.V. a foreign banking corporation,
Defendant-Appellant, Cross-Appellee.
 No. 81-5717.
 United States Court of Appeals,
Eleventh Circuit.
 March 28, 1983.
 
 Peters, Pickle, Flynn, Niemoeller, Stieglitz & Downs, Nancy Schleifer, Miami, Fla., for defendant-appellant, cross-appellee.
 Arnold R. Ginsberg, Miami, Fla., for plaintiff-appellee, cross-appellant.
 Appeals from the United States District Court for the Southern District of Florida.
 Before RONEY and JOHNSON, Circuit Judges, and DYER, Senior Circuit Judge.
 RONEY, Circuit Judge:
 
 
 1
 In a case of first impression in this Court, we hold that a foreign banking corporation engaged in the normal activity with resident correspondent banks to facilitate the movement of money is not subject to long-arm jurisdiction in Florida, even though it makes certain passive investments in federal funds. We therefore reverse a money judgment against it.
 
 
 2
 This is a diversity case. Plaintiff Oriental Imports and Exports, a Florida corporation, sold garments to a purchaser in the Netherlands Antilles. When it did not receive payment for the goods, it sued Maduro & Curiel's Bank, a Netherlands Antilles bank which maintains correspondent bank accounts in Miami, Florida, on the ground that Maduro & Curiel's Bank wrongfully delivered title documents to the purchaser without payment. Finding jurisdiction under the long-arm statute, the district court held the defendant negligent in the handling of this commercial collection item and rendered judgment for $21,104.24. The court denied punitive damages on the ground that the plaintiff had not demonstrated malicious or wanton conduct. The bank appeals the findings of jurisdiction and negligence. The plaintiff cross-appeals the denial of punitive damages. Since the district court was without in personam jurisdiction, we do not reach the merits of the negligence issue or the cross-appeal.
 
 
 3
 The facts that control the jurisdictional issue are not in dispute. Maduro & Curiel's Bank is a Netherlands Antilles bank which acts as a correspondent bank for various Miami banks. It received sale documents from Flagship Bank of Miami, along with a sight draft and an airway bill for goods sold by plaintiff. Prior to that, the president of Oriental Imports had gone to Curacao in the Netherlands Antilles and obtained an order from Jose Faerman & Company, a Netherlands Antilles corporation. Oriental Imports had then delivered certain sale documents (invoices, packing lists and a letter of authority) to Flagship Bank which forwarded them to defendant for delivery to the purchaser Jose Faerman & Company upon receipt of payment for the goods. If the transaction had gone as planned, the customer would have made payment to Maduro & Curiel's Bank, which would have notified its correspondent bank in Miami. The Miami bank would have then debited Maduro & Curiel's account and credited the seller's account. Although some facts are disputed, it is clear that Jose Faerman & Company eventually received possession of the goods, and that no payment was ever made to Oriental Imports and Exports.
 
 
 4
 The law is clear that a federal court in a diversity action may exercise personal jurisdiction over a nonresident defendant only to the extent permitted by the long-arm statute of the forum state. Rubaii v. Lakewood Pipe of Texas, Inc., 695 F.2d 541 (11th Cir.1983); Gold Kist, Inc. v. Baskin-Robbins Ice Cream Co., 623 F.2d 375, 377 (5th Cir.1980). Because the reach of the Florida long-arm statute is a question of Florida state law, federal courts are required to construe it as would the Florida Supreme Court. See Moore v. Lindsey, 662 F.2d 354, 357-58 (5th Cir. Unit B 1981); Jetco Electronic Industries, Inc. v. Gardiner, 473 F.2d 1228, 1232 (5th Cir.1973). The Florida long-arm statute is strictly construed, and the person invoking jurisdiction under it has the burden of proving facts which clearly justify the use of this method of service of process. Bank of Wessington v. Winters Government Securities Corporation, 361 So.2d 757, 759 (Fla.Dist.Ct.App.1978); Elmex Corp. v. Atlantic Federal Savings and Loan Association, 325 So.2d 58, 61 (Fla.Dist.Ct.App.1976).
 
 
 5
 Since the defendant has no office or agency in this state, the key portions of the Florida long-arm statute require that the defendant "engage in" or "carry on" a business or business venture in the state, commit a tortious act in the state, or engage in solicitation or service activities within the state.[1]
 
 
 6
 Plaintiff argues that first, the normal activities of a foreign correspondent bank constitute doing business in Florida and second, in addition to such activities, the bank here had investments in the United States which either alone, or coupled with its correspondent bank activities, constitute doing business and third, in any event, the defendant committed a tort within the state and is subject to jurisdiction under that section of the Florida statute.
 
 
 7
 We first examine whether the bank was "doing business" in Florida through its correspondent bank accounts in Miami. Here we are focusing on the normal activities that would probably be carried on by any correspondent bank. A representative of Citizens & Southern International Bank testified that correspondent accounts facilitate the transfer of funds incidental to the conduct of international trade between citizens of different countries. Maduro & Curiel's Bank has its principal place of business in Curacao. It has no offices, agents, personnel or property in Florida. It is not licensed to do business in Florida, and has no agent to accept service of process in Florida. It maintains correspondent bank accounts with Miami banks, including Southeast First National Bank and Citizens & Southern International Bank of Miami. Plaintiff introduced evidence that Maduro & Curiel's Bank had passed at least $150,000,000 through these accounts in deposits and withdrawals. This was essentially money of its customers. The transactions with the Miami banks were handled by mail or courier.
 
 
 8
 Although there appears to be no Florida authority directly on point, courts in other jurisdictions have held that the maintenance of a correspondent banking relationship alone is not sufficient to confer personal jurisdiction over a foreign bank. See Faravelli v. Bankers Trust Co., 85 A.D.2d 335, 447 N.Y.S.2d 962, 964-65 (N.Y.App.Div.1982); Nemetsky v. Banque de Developpement de la Republique du Niger, 64 A.D.2d 694, 407 N.Y.S.2d 556 (N.Y.App.Div.1978), aff'd, 48 N.Y.2d 962, 425 N.Y.S.2d 277, 401 N.E.2d 388 (N.Y.1979); Amigo Foods Corp. v. Marine Midland Bank--New York, 39 N.Y.2d 391, 384 N.Y.S.2d 124, 127, 348 N.E.2d 581 (N.Y.1976). In E.I.C., Inc. v. Bank of Virginia, 108 Cal.App.3d 148, 166 Cal.Rptr. 317 (Cal.App.1980), the California court held that it lacked jurisdiction over a Virginia bank which maintained balances and had a correspondent banking relationship with two California banks. Although the California statute allowed the court to "exercise jurisdiction on any basis not inconsistent with the Constitution of California or of the United States," the court concluded that the correspondent bank relationship did not provide the requisite "minimum contacts" with California to satisfy the due process clause:
 
 
 9
 [M]ost banks of any size maintain correspondents in all major regions of the country and in selected areas overseas. It would be a distortion of due process to hold that a state acquires general personal jurisdiction over an out-of-state bank (as opposed to in rem jurisdiction) merely because the bank has a correspondent relationship with a bank within the state and a balance on deposit with its correspondent bank.
 
 
 10
 166 Cal.Rptr. at 320, citing Bank of America v. Whitney National Bank, 261 U.S. 171, 173, 43 S.Ct. 311, 312, 67 L.Ed. 594 (1922). In Whitney, decided before the "minimum contacts" standard of International Shoe Co. v. Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), and without reference to a long-arm statute, the Supreme Court held that a Louisiana bank which maintained six correspondent bank accounts in New York had no "presence" in New York for jurisdictional purposes, and therefore could not be sued in New York.
 
 
 11
 A Florida case suggests the fact that Miami banks were holding the funds of Maduro & Curiel's Bank in Florida would not be sufficient for long-arm jurisdiction. In April Industries, Inc. v. Levy, 411 So.2d 303 (Fla.Dist.Ct.App.1982), parties outside of Florida entered into a stock purchase agreement which included an escrow agreement whereby a Miami attorney would hold certain notes in Florida. When the escrowee was sued in Florida, the court held that the presence of the corporation's personal property in Florida pursuant to an escrow agreement entered outside of Florida, and the control of that property by a Florida escrowee, were insufficient contacts to find that the corporation conducted business or had an agency in Florida for the purposes of the long-arm statute.
 
 
 12
 The reasoning of these cases seems sound. We are persuaded that the Florida long-arm statute, which confers jurisdiction over a nonresident defendant who "operates, conducts, engages in or carries on a business" in Florida, would not be interpreted to permit personal jurisdiction solely on the basis of foreign bank's correspondent relationship with a Florida bank.
 
 
 13
 The fact that Maduro & Curiel's Bank maintained large balances in its Miami accounts, or transferred large amounts of money through these accounts, does not alter this analysis. The inquiry whether a nonresident is conducting business in Florida concerns the nature, not the extent, of the nonresident's activities in Florida. McLean v. Church of Scientology, 538 F.Supp. 545, 549 (M.D.Fla.1982). The requirement that the defendant have a connection with the forum state substantial enough to make the exercise of jurisdiction reasonable cannot be satisfied by the dollar amount of the transaction, but depends on the facts and circumstances of the case. Elmex Corp. v. Atlantic Federal Savings and Loan Association, 325 So.2d 58, 63 n. 7 (Fla.Dist.Ct.App.1976).
 
 
 14
 Plaintiff argues that more than an ordinary correspondent banking relationship existed in this case. Focusing upon the agreement between Maduro & Curiel's Bank and Citizens & Southern International Bank of Miami, which required Citizens & Southern to invest any funds in Maduro & Curiel's account in excess of $50,000 in the federal funds market, plaintiff argues that by investing in federal funds through a Miami correspondent, Maduro & Curiel's Bank was conducting business in Florida. A representative of Citizens & Southern International Bank testified that the bank made this opportunity to have excess funds invested available to all of its correspondents.
 
 
 15
 The cases in which Florida courts have interpreted the long-arm statute do not support the theory that a nonresident's passive investment of money in Florida provides a basis for jurisdiction. In Klein v. Mega Trading, Ltd., 416 So.2d 866 (Fla.Dist.Ct.App.1982), a New Jersey resident purchased an interest in a Florida limited partnership. Noting that this investment was analogous to the purchase of corporate stock, the court held that the nonresident's investment was not sufficient contact with Florida to satisfy the long-arm statute. In Compuguide Corp. v. Sachs, 259 So.2d 513 (Fla.Dist.Ct.App.1972), a nonresident corporation's contract, which was neither entered into nor executed in Florida, to purchase all the stock of a Florida corporation did not constitute doing business in Florida.
 
 
 16
 MacMillan-Bloedel v. Canada, 391 So.2d 749 (Fla.Dist.Ct.App.1980), held that a nonresident corporation was not "doing business" for jurisdictional purposes even though its wholly owned subsidiary was engaged in business in Florida, because the nonresident corporation was not shown to have "control" over the subsidiary selling its products in Florida. In Volkswagenwerk Atkiengelselischaft v. McCurdy, 340 So.2d 544 (Fla.Dist.Ct.App.1976), cert. denied, 348 So.2d 950 (Fla.1977), the court determined that it lacked jurisdiction over a German corporation which had a wholly owned subsidiary engaged in business in Florida. "Only where there is a showing by plaintiff that the parent corporation exercised such a degree of control over its subsidiary that the activities of the subsidiary were in fact the activities of the parent within the state is substituted service of process permitted." 340 So.2d at 546.
 
 
 17
 Although these cases involved Fla.Stat.Ann. Sec. 48.181, the substituted service of process statute which was in effect before the current long-arm statute was enacted, decisions concerning what constituted doing business under Section 48.181 apply to Section 48.193(1)(a). Orange Motors, Inc. v. Reuben H. Donnelly Corp., 415 So.2d 892, 895 n. 3 (Fla.Dist.Ct.App.1982). Under earlier Florida statutes, investment by a nonresident was not a sufficient basis for jurisdiction. See Uible v. Landstreet, 392 F.2d 467 (5th Cir.1968) (no jurisdiction over nonresidents who held stock in Florida corporation as investment for profit); Crockin v. Boston Store, 137 Fla. 853, 188 So. 853, 856 (Fla.1939) (nonresident corporation was not doing business in Florida by owning a controlling interest in a Florida corporation). These cases indicate that Maduro & Curiel's Bank's investment in the federal funds market through its agreement with a Miami bank would not suffice for jurisdiction under the Florida long-arm statute.
 
 
 18
 Neither do Maduro & Curiel's Bank's activities in Florida considered collectively show a general course of business activity in the state. Compare Compuguide v. Sachs, 259 So.2d 513 (Fla.Dist.Ct.App.1972) (contract to purchase all of Florida corporation's stock did not constitute business venture sufficient for jurisdiction) with Anson v. Lemperuer, 390 So.2d 478 (Fla.Dist.Ct.App.1980) (jurisdiction where express object of partnership was to acquire land in Florida and develop condominium units). Instead, the activities show merely a correspondent banking relationship coupled with a passive investment in federal funds. We conclude that these activities of Maduro & Curiel's Bank do not amount to conducting a business in Florida sufficient for the assertion of long-arm jurisdiction under Fla.Stat.Ann. Sec. 48.193(1)(a).
 
 
 19
 Although Florida courts have occasionally found contacts with banks in Florida to be an adequate basis for jurisdiction, those cases involved nonresident defendants who undertook specific contractual obligations in Florida. In Horace v. American National Bank and Trust Co., 251 So.2d 33 (Fla.Dist.Ct.App.1971), Horace and two others, purchasing 60% of the stock of a Florida corporation, personally appeared at the bank seeking to guarantee the present and future obligations of the corporation. The same day, they opened a commercial checking account, signing the signature card. On the basis of the guarantees, the bank honored the checks of the corporation until the account was overdrawn by $25,000. The court upheld service of process on Horace, a nonresident, stating that by becoming the guarantor of a Florida corporation's debts he had engaged in business in Florida. In this case, Maduro & Curiel's Bank has undertaken no agreement on behalf of a business in Florida.
 
 
 20
 Florida courts upheld jurisdiction over out-of-state banks in two recent cases, where agents of the nonresident banks had allegedly obligated themselves to buy and sell Government National Mortgage Association Contracts. See Bank of Wessington v. Winters Government Securities Corporation, 361 So.2d 757 (Fla.Dist.Ct.App.1978); Citizens State Bank v. Winters Government Securities Corp., 361 So.2d 760 (Fla.Dist.Ct.App.1978). These cases make it clear that a nonresident bank need not have a Florida office, agent, or meeting in order for Florida courts to exercise jurisdiction. The banks involved in those cases, however, unlike Maduro & Curiel's Bank, allegedly made affirmative commitments to purchase particular securities.
 
 
 21
 Plaintiff contends that jurisdiction may be asserted under Section 48.193(1)(b), which authorizes jurisdiction over one who "commits a tortious act within this state." The district court found that Maduro & Curiel's Bank, contrary to the terms of the commercial collection agreements, either obtained the approval and advice of the intended purchaser for payment of a draft prior to release of the documents and then cancelled the intended purchaser's approval for payment of the draft, or simply released the documents without obtaining payment of the draft as required. If either of these two negligent acts did occur, it occurred in Netherlands Antilles.
 
 
 22
 This is not a case where the precise location of the alleged tort is difficult to identify. Cf. Rebozo v. Washington Post Co., 515 F.2d 1208 (5th Cir.1975) (out-of-town newspaper published allegedly libelous article circulated in Florida); Bangor Punta Operations v. Universal Marine Co., 543 F.2d 1107 (5th Cir.1976) (foreign corporate defendant advertised and sold trawlers in Florida which were built in violation of plaintiff's property rights). The negligence alleged here clearly occurred in the Netherlands Antilles, although injury in Florida may have resulted. In Jack Pickard Dodge, Inc. v. Yarbrough, 352 So.2d 130 (Fla.Dist.Ct.App.1977), the court held that a nonresident auto dealer who serviced a car, which was eventually sold to a Florida resident and caused injury in Florida, had not committed a tortious act within the state. "[The dealer] has committed no act in Florida, tortious or otherwise .... [T]he occurrence of the injury alone in the forum state does not satisfy the statutory test." 352 So.2d at 134. See April Industries, Inc. v. Levy, 411 So.2d 303, 305-06 (Fla.Dist.Ct.App.1982) (no jurisdiction under Section 48.193(1)(b) where alleged wrong occurred outside Florida). Cf. Watts v. Haun, 393 So.2d 54 (Fla.Dist.Ct.App.1981) (jurisdiction where act essential for tort occurred in Florida). We conclude that jurisdiction under Section 48.193(1)(b) is not appropriate here.
 
 
 23
 Under Section 48.193(1)(f)(1), Florida courts may exercise jurisdiction over a nonresident defendant who causes injury in Florida by an act outside the state, if at the time of the injury the defendant was engaged in solicitation or service activities within Florida which resulted in the injury. Where a business allegedly breaches a contract outside the state, resulting in damage to plaintiffs in Florida, but does not conduct or solicit business activities in Florida, it does not have the requisite contacts with Florida to sustain jurisdiction under the long-arm statute. Joyce Brothers Storage & Van Co. v. Piechalak, 343 So.2d 97 (Fla.Dist.Ct.App.1977). Maduro & Curiel's Bank was not engaged in solicitation or service activities within the state of Florida. It did not solicit business or advertise in Florida, and its service activities were locally based in the Netherlands Antilles. Therefore jurisdiction over Maduro & Curiel's Bank cannot be sustained under Section 48.193(1)(f)(1).
 
 
 24
 The judgment is reversed and the case is dismissed for lack of personal jurisdiction over the defendant.
 
 
 25
 REVERSED AND RENDERED.
 
 
 
 [1]
 Three sections of the Florida long-arm statute, Fla.Stat.Ann. Secs. 48.193(1)(a), (b), and (f)(1), are involved
 (1) Any person, whether or not a citizen or resident of this state, who personally or through an agent does any of the acts enumerated in this subsection thereby submits that person and, if he is a natural person, his personal representative to the jurisdiction of the courts of this state for any cause of action arising from the doing of any of the following:
 (a) Operates, conducts, engages in, or carries on a business or business venture in this state or has an office or agency in this state.
 (b) Commits a tortious act within this state.
 * * *
 (f) Causes injury to persons or property within this state arising out of an act or omission outside of this state by the defendant, provided that at the time of the injury ...
 
 
 [1]
 The defendant was engaged in solicitation or service activities within this state which resulted in such injury