922 So.2d 395 (2006)
BANCO CONTINENTAL, S.A., Appellant,
v.
TRANSCOM BANK (BARBADOS), LTD., Appellee.
No. 3D05-1014.
District Court of Appeal of Florida, Third District.
March 8, 2006.
*396 Fowler White Burnett and June G. Hoffman and Helaine S. Goodner, Miami, for appellant.
Concepcion & Associates and Carlos F. Concepcion, Coral Gables, and Elio F. Martinez, Jr., for appellee.
Before CORTIÑAS and ROTHENBERG, JJ., and SCHWARTZ, Senior Judge.
CORTIÑAS, Judge.
The defendant, Banco Continental, S.A. ("Continental"), issued a letter of credit in the amount of $880,000 in U.S. Dollars to *397 the plaintiff, Transcom Bank, Ltd. ("Transcom"). It is undisputed that Continental is a Honduran corporation with its principal office in San Pedro Sula, Honduras and approximately twenty (20) additional offices, all of which are in Honduras. Transcom is a bank organized under the laws of Barbados and located in Guatemala City, Guatemala. The letter of credit between the parties was sent from Honduras to Guatemala. Pursuant to this letter of credit, Continental issued a check to Transcom for $880,000, drawn on Continental's correspondent bank account at Union Planters Bank ("UPB") in Miami, Florida. When Transcom allegedly failed to comply with the conditions of the letter of credit, Continental ordered UPB to stop payment on the check. The issue presented on appeal is whether there exists personal jurisdiction over the defendant, Continental.

I. BACKGROUND
Transcom filed a complaint against Continental in Miami-Dade County, alleging that Continental is subject to personal jurisdiction in Florida because it: (1) breached a contract in Florida pursuant to section 48.193(1)(g), Florida Statutes (2001); (2) conducted business in Florida through an agent, Inversiones Continental USA Corp. ("Inversiones USA"), which is located in Miami, Florida, pursuant to section 48.193(1)(a); and (3) maintained a correspondent account with UPB in Florida pursuant to section 48.193(2), Florida Statutes (2001).[1]
In response, Continental filed a motion to dismiss disputing personal jurisdiction. In support of its motion, Continental attached several affidavits of its president and chairman, Jaime Rosenthal, stating that Continental does not operate its business outside of Honduras, has never employed any individuals or agents in Florida, and does not advertise or solicit business in Florida. Continental argued that it does not have an agency relationship with Inversiones USA as Continental does not exercise any corporate control over the business affairs of Inversiones USA. Additionally, Continental argued that, although it maintains a commercial bank account and an open line of credit with UPB to facilitate the transfer of *398 money in international commerce, such a correspondent relationship is insufficient to subject it to personal jurisdiction in Florida.
After conducting an extensive hearing, the trial court denied Continental's motion to dismiss. Although the trial court did not believe that Transcom had satisfied its burden of showing that the constitutional minimum contacts requirement was met, it concluded that, in the absence of further elucidation from this court, it was bound by the holding in Banco De La Construccion, S.A. v. Inversiones Y Commercio, Inc., 677 So.2d 35 (Fla. 3d DCA 1996). The trial court correctly noted that the Construccion opinion did not discuss or address the constitutional due process requirement for personal jurisdiction.
Continental appeals from a non-final order denying its motion to dismiss for lack of personal jurisdiction. We reverse.

II. DISCUSSION
We review the issue de novo. See Labbee v. Harrington, 913 So.2d 679, 681 (Fla. 3d DCA 2005)(noting that the standard for reviewing the trial court's decision regarding a motion to dismiss for lack of personal jurisdiction is de novo).
In Venetian Salami Co. v. J.S. Parthenais, 554 So.2d 499 (Fla.1989), the Florida Supreme Court set forth the requirements for exercising personal jurisdiction over a nonresident defendant under one of Florida's long-arm statutes. The court articulated a two-prong analysis in determining whether long-arm jurisdiction can appropriately be exercised over a nonresident defendant. Venetian Salami, 554 So.2d at 502. First, the court must establish that the complaint alleges sufficient jurisdictional facts to bring the action within the ambit of the long-arm statute. Id. If the allegations properly comply with the statute, the court must next determine that the defendant has sufficient minimum contacts with the forum state to satisfy the Fourteenth Amendment's due process requirements. See U.S. Const. amend. XIV, § 1; id.; e.g., Hartcourt Cos., Inc. v. Hogue, 817 So.2d 1067 (Fla. 5th DCA 2002).
Here, it is undisputed that Transcom's complaint satisfied the first prong of the jurisdictional analysis, namely that the complaint contain sufficient allegations to satisfy the statutory requirement of section 48.193(1)(g). Therefore, we need only determine whether the constitutional component of the two-prong test has been met.
Although Transcom relies on our decision in Construccion, that case addressed the issue of personal jurisdiction through a footnote reference to a long-arm statute, section 48.193(1)(g), Florida Statutes. Construccion, 677 So.2d at 36, n. 1. In Construccion, we did not conduct a minimum contacts analysis. Instead, the focus of the Construccion opinion was the issue of forum non conveniens, that is, whether or not it had been established that the case presented a sufficiently strong nexus to Florida to justify the use of Florida state courts and other judicial resources to resolve the claim. Construccion, 677 So.2d at 36 (citing Kinney Sys., Inc. v. Continental Ins. Co., 674 So.2d 86 (Fla.1996)). Nowhere in Construccion did we address whether or not the defendant had sufficient minimum contacts with the state of Florida to satisfy the constitutional due process requirement.
In International Shoe Co. v. Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), the United States Supreme Court held that, in order to subject a nonresident defendant who is not present in the forum state to personal jurisdiction, the defendant must have certain minimum contacts with the forum "such that the maintenance *399 of the suit does not offend `traditional notions of fair play and substantial justice.'" International Shoe, 326 U.S. at 316, 66 S.Ct. 154 (quoting Milliken v. Meyer, 311 U.S. 457, 463, 61 S.Ct. 339, 85 L.Ed. 278 (1940)); see also Venetian Salami, 554 So.2d at 500. This inquiry has evolved and more recently, the Supreme Court, when analyzing minimum contacts, has required "`some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985)(quoting Hanson v. Denckla, 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958)). "[T]he defendant's conduct and connection with the forum state [must be] such that he [or she] should reasonably anticipate being haled into court there." World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 287, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980).
It is well-settled that a failure to pay money in Florida, without more, is insufficient to satisfy the constitutional due process minimum contacts requirement. Venetian Salami, 554 So.2d at 501 (finding that the mere failure to pay money in Florida, standing alone, is insufficient to obtain jurisdiction over a nonresident defendant); e.g., Blankenship v. Interim Servs. Inc., 700 So.2d 429, 432 (Fla. 3d DCA 1997)(holding that a foreign buyer who purchases goods in Florida and fails to pay for them in Florida does not submit himself to personal jurisdiction).
Transcom argues that Continental had sufficient minimum contacts with Florida to be subject to jurisdiction in Florida because Continental did more than merely fail to make a payment in Florida. Specifically, Transcom contends that Continental maintained a correspondent banking relationship with UPB in Florida.
However, Continental's corresponding relationship with UPB does not provide the requisite minimum contacts for personal jurisdiction. For example, in Oriental Imports & Exports, Inc. v. Maduro & Curiel's Bank, N.V., 701 F.2d 889 (11th Cir.1983), a Florida corporation sold goods to a foreign purchaser. When the purchaser's bank, located in Curacao, improperly delivered title documents to the purchaser without paying the Florida seller, the seller instituted a negligence lawsuit against the bank in Florida because the bank maintained correspondent bank accounts in Miami, Florida. Id. at 890. The Eleventh Circuit reasoned that, since the defendant bank had no office or agency in Florida, the seller would have to demonstrate, pursuant to section 48.193(1)(a) of the long-arm statute, that the defendant engaged in or carried on a business or business venture in the state. Id. at 891. The court proceeded to examine whether the Bank was doing business in Florida through its correspondent bank accounts in Miami and found that, notwithstanding the correspondent bank's investments on behalf of the foreign defendant bank, the defendant bank was not subject to jurisdiction. Id. at 892-93. The Eleventh Circuit held that "a foreign [bank] engaged in the normal activity with resident correspondent banks to facilitate the movement of money is not subject to long-arm jurisdiction in Florida, even though it makes certain passive investments in federal funds." Id. at 890.
Similarly, in the instant case, we cannot find that Continental submitted itself to personal jurisdiction by maintaining a correspondent banking relationship with UPB. Continental's principal place of business is in Honduras and all of its offices are located in Honduras. It does not have any physical presence of any kind in Florida. Nor did the underlying business *400 transaction between the parties have any connection to Florida. Since Continental's relationship with UPB did no more than facilitate the transfer of monies in international commerce under a letter of credit, we cannot find that Continental reasonably anticipated being haled into court in Florida. See World-Wide Volkswagen, 444 U.S. at 287, 100 S.Ct. 559. Therefore, we find that Continental's correspondent relationship with a Florida bank is insufficient to meet the minimum contacts requirement. Accordingly, Continental's activities within Florida were also not substantial for purposes of section 48.193(2), and cannot subject Continental to the exercise of the court's general jurisdiction.
Furthermore, Transcom claims that Continental may be properly sued in Florida because it conducted business in Florida through an agent, Inversiones USA, which is located in Miami, Florida. The trial court found that Transcom was not able to show an agency relationship between Continental and Inversiones USA. We agree.
To show an agency relationship, Transcom must show the existence of three elements: "1) acknowledgment by the principal that the agent will act for it; 2) the agent's acceptance of the undertaking; and 3) control by the principal over the action of the agent." Enic, PLC v. F.F. South & Co., Inc., 870 So.2d 888, 891 (Fla. 5th DCA 2004)(citing Goldschmidt v. Holman, 571 So.2d 422, 424 n. 5 (Fla. 1990)). In Enic, the Fifth District observed that, in order to hold a parent corporation liable for the acts of its subsidiary, the parent's control must be "high and very significant," such that the subsidiary functions for the sole purpose of achieving the parent's interests. Id. at 891. Based on this reasoning, the Enic court found that the parent corporation did not have the operational control over its subsidiary for personal jurisdiction purposes because, although the subsidiary reported to its parent, the subsidiary's day-to-day operation was controlled solely by the subsidiary. Id. at 892. The court also noted that the subsidiary's presence in Florida was primarily for the purpose of carrying on its own business rather than the business of its parent. Id.
Here, although Transcom has demonstrated a link between Continental and Inversiones USA, this showing is far short of an agency relationship. Inversiones USA is a wholly-owned subsidiary of Inversiones Continental Panama, S.A., which is in turn a wholly-owned subsidiary of Inversiones Continental S.A. de C.V., a holding company, which also owns most of Continental's stock. Although Mr. Rosenthal, besides serving as the president and chairman of Continental, also serves as Inversiones' sole director, he owns less than fifty percent (50%) of its stock. Furthermore, Continental and Inversiones USA function as separate and distinct entities. There is no evidence in the record that Continental sought to achieve its business purposes through Inversiones USA, which merely makes passive investments in stocks and bonds.
Transcom's argument that, on certain occasions, Continental paid Inversiones USA's state taxes, resident agent, and Florida accountant fees, also falls short of demonstrating that Inversiones USA operated solely to achieve Continental's purposes. Additionally, the fact that Mr. Rosenthal was involved with both Continental and Inversiones USA, does not rise to the level of operational control by Continental because Mr. Rosenthal never controlled Inversiones USA or participated in its day-to-day operation. See Kramer Motors, Inc. v. British Leyland, Ltd., 628 F.2d 1175, 1177-78 (9th Cir.), cert. denied, 449 U.S. 1062, 101 S.Ct. 785, 66 L.Ed.2d 604 *401 (1980). Nor is there any evidence that Inversiones USA participated in any way in the transaction between the parties.

III. CONCLUSION
Because Transcom has failed to show an agency relationship between Continental and Inversiones USA and Continental did not have the requisite minimum contacts with the State of Florida to satisfy the constitutional due process requirement, we reverse the non-final order denying Continental's motion to dismiss for lack of personal jurisdiction.
Reversed and remanded.
NOTES
[1] Section 48.193, states, in relevant part:

Acts subjecting person to jurisdiction of courts of state. 
(1) Any person, whether or not a citizen or resident of this state, who personally or through an agent does any of the acts enumerated in this subsection thereby submits himself . . . to the jurisdiction of the courts of this state for any cause of action arising from the doing of any of the following acts: (a) Operating, conducting, engaging in, or carrying on a business or business venture in this state or having an office or agency in this state.
. . .
(g) Breaching a contract in this state by failing to perform acts required by the contract to be performed in this state.
. . .
(2) A defendant who is engaged in substantial and not isolated activity within this state, . . . is subject to the jurisdiction of the courts of this state, whether or not the claim arises from that activity.
§ 48.193, Fla. Stat. (2001).