710 So.2d 716 (1998)
ACHIEVERS UNLIMITED, INC., a Nevada corporation, Appellant,
v.
NUTRI HERB, INC., a Florida corporation, Michael Connelly, Ted Keys, Toby Widett, Michael Richter and Maxine Zitlin, Appellees.
No. 97-1353.
District Court of Appeal of Florida, Fourth District.
May 13, 1998.
*717 Mark S. Sussman, North Miami Beach and Mark L. Pomeranz of Pomeranz & Landsman, P.A., North Miami Beach, for appellant.
Alvin D. Lodish and Sherril M. Colombo of Rubin, Baum, Levin, Constant, Friedman & Bilzin, Miami, for appellee.
PER CURIAM.
This is an appeal from the trial court's dismissal of appellant's complaint as to appellees Michael Richter and Maxine Zitlin for lack of personal jurisdiction. We reverse and remand.
The Florida Supreme Court held that:

*718 In determining whether long-arm jurisdiction is appropriate in a given case, two inquiries must be made. First, it must be determined that the complaint alleges sufficient jurisdictional facts to bring the action within the ambit of the statute; and if it does, the next inquiry is whether sufficient "minimum contacts" are demonstrated to satisfy due process requirements.
...
Initially, the plaintiff may seek to obtain jurisdiction over a nonresident defendant by pleading the basis for service in the language of the statute without pleading the supporting facts. By itself, the filing of a motion to dismiss on grounds of lack of jurisdiction does nothing more than raise the legal sufficiency of the pleadings. A defendant wishing to contest the allegations of the complaint concerning jurisdiction or to raise a contention of minimum contacts must file affidavits in support of his position. The burden is then on the plaintiff to prove by affidavit the basis upon which jurisdiction may be obtained. In most cases, the affidavits can be harmonized, and the court will be in a position to make a decision based upon facts which are essentially undisputed.
Venetian Salami Co. v. Parthenais, 554 So.2d 499, 502 (Fla.1989) (citations omitted).
Here, appellant is a multi-level marketing company with its principal place of business in West Palm Beach, Florida, and distributors all over the country. Richter and Zitlin were former distributors for appellant. In relevant part, the third amended complaint alleged counts of defamation and conspiracy to tortiously interfere with the appellant's contractual and business relationships with its distributors.[1] The defamation count alleged generally:
Commencing as of May 1995, Defendants have engaged in an organized campaign to defame and disparage Plaintiff and injure Plaintiff's business relationship with its distributors. This campaign includes the dissemination of false, misleading and/or disparaging information to distributors of Nutri Herb, Inc., with the express intent that the information be used to harm the business relationship between Plaintiff and its distributors.
Specifically as to Richter, it alleged that:
Michael Richter has made statements to distributors in Palm Beach County and elsewhere that Achievers is not a good company and that Achievers has been selling products on the side directly to retailers.
The affidavit of Richter that was filed with his motion to dismiss does not contest that he made the statements to distributors in Palm Beach County, or that the statements, if made, would establish the tort of defamation. Making a defamatory statement to a listener in Florida, even via telephone, constitutes the commission of a tort in Florida within the meaning of Florida's long-arm statute. § 48.193(1)(b) Fla. Stat., (1995), Green v. USF & G Corp., 772 F.Supp. 1258, 1261 (S.D.Fla.1991). Therefore, appellant sufficiently pled unrefuted jurisdictional facts to bring Richter within the ambit of the long arm statute based on the commission of a tort within Florida.
However, Richter's affidavit clearly raises a contention of insufficient minimum contacts to comport with due process. "[D]ue process requires that the defendant *719 have certain minimum contacts with the forum such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice ... the test is whether the defendant's conduct is `such that he should reasonably anticipate being haled into court there'." Venetian Salami Co. v. Parthenais, 554 So.2d 499, 500 (Fla.1989), citing International Shoe Co. v. Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945); World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). The requirement is satisfied if the defendant purposefully directs activities at Florida and litigation arises out of those activities, or the defendant purposefully avails himself of the privilege of conducting activities within the forum state. Green v. USF & G Corp., at 1262, citing, Burger King v. Rudzewicz, 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985); Hanson v. Denckla, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958).
Richter did not refute the allegations that he was a distributor for appellant, and purchased products from appellant for distribution. Richter acknowledged in his affidavit that he communicated with appellant in Florida via telephone, telefax, and mail. Appellant filed several affidavits with the trial court in support of its position. The undisputed portions of the affidavits established that Richter had called a distributor for appellant at his home in Broward County and told him that Achievers was not a good company, that Achievers had been selling product on the side directly to retailers, and that the amount of checks to distributors were going down.
Further, five letters were sent to distributors for Achievers at various states outside of Florida which contained brochures about Nutri Herb and encouraged the distributors to get involved with Nutri Herb. The letters indicated they were from Richter and bore his return address in Minnesota. However, the letters were postmarked in West Palm Beach. Richter also received compensation from transactions conducted by members of his "downline" in Florida.
This court has held that a non-resident defendant who sent an allegedly defamatory letter to six Broward County residents could have reasonably anticipated being haled into a Florida court. Silver v. Levinson, 648 So.2d 240 (Fla. 4th DCA 1994). In Silver, this court stated:
Defendant in this case committed an intentional act directly aimed at Florida and made accusations targeted at a Florida resident. He "purposefully directed" his activities at Florida.
Id. at 243.
Here, Richter similarly committed an intentional act directly aimed at Florida and made accusations targeted at a corporation that has its principal place of business in Florida. In addition, Richter had additional contacts with the state including his position as a distributor for appellant which resulted in Richter purchasing products from appellant in Florida and communicating with appellant in Florida by telephone, telefax, and mail. Accordingly, we find Richter had sufficient minimum contacts with Florida to comport with due process, and the trial court erred by dismissing the complaint against him.
Appellant alleged that Maxine Zitlin fell within the long arm statute by committing a tort within the state and/or engaging in substantial and not isolated activity within Florida.
As to the commission of a tort within Florida, appellant alleged:
Maxine Zitlin ... contributed to and/or wrote a false and disparaging letter regarding Achievers, its officers and shareholders, and mailed said letter to hundreds of Achievers' distributors on or about late July 1995. A copy of said letter is attached hereto as Exhibit "A"
In her affidavit filed in support of her motion to dismiss Zitlin did not contest this allegation. The problem for appellant is that it never alleged that the letter was sent to distributors in Florida. Florida courts subscribe to the rule that the tort of libel occurs wherever the offending material is circulated. Madara v. Hall, 916 F.2d 1510, 1515 (11th Cir.1990). Appellant did not specifically allege that Zitlin circulated libelous material in Florida and did not present any affidavits *720 stating that she did. Accordingly, the trial court did not err by finding that appellant failed to establish that Zitlin personally committed a tort within Florida.
However, appellant also alleged that jurisdiction was proper under the long-arm statute because Zitlin engaged in substantial and not isolated activities within the state. Zitlin was a distributor for Achievers for a three year period. She consistently ordered one or two cases of product per month from Achievers throughout her distributorship and sent order forms to Florida from where the product was shipped. She also operated a distribution center for Achievers in California. Appellant would send cases of its product to Zitlin to warehouse so other distributors in California were able to pick up the product as opposed to having to send an order to Florida and wait several days. She had phone contact with appellant up to several times per week.
Later, Zitlin became a distributor for Nutri Herb, located in Riviera Beach. Zitlin also procured a significant amount of printing work from Nutri Herb, producing over 100,000 brochures and fliers, 5,000 applications and 5,000 order forms, and several thousand cassette tapes. These materials were sold to Nutri Herb and shipped to their offices in Riviera Beach.
It has been held that "substantial and not isolated activity" means "continuous and systematic general business contacts". American Overseas Marine Corp. v. Patterson, 632 So.2d 1124, 1128 (Fla. 1st DCA 1994). We find that Zitlin's three year involvement with Achievers, as well as her subsequent involvement with Nutri Herb Inc., establishes that Zitlin had "continuous and systematic general business contacts" with Florida sufficient to fall within the ambit of section 48.193(2).
The next inquiry is whether this defendant had sufficient minimum contacts with the forum such that assertion of jurisdiction would comport with due process. Appellee relies on Sea Lift, Inc. v. Refinadora Costarricense de Petroleo, S.A., 792 F.2d 989 (11th Cir.1986), to support her argument that her contacts with Florida were insufficient. In Sea Lift, the court held a Costa Rican corporation had insufficient contacts where it had solicited a Florida corporation to salvage a barge, and sent a standard form contract to the Florida corporation. However, the court recognized:
The due process clause permits a state to exercise `general jurisdiction' over the person of a foreign corporation if there are continuous and systematic general business contacts between the state and the foreign corporation, even if the cause of action does not relate to [the defendant's] activities in the forum state.
Id. at 992. Zitlin's three year relationship with Achievers, established continuous and systematic general business contacts. Thus, the trial court erred by finding the assertion of jurisdiction over Zitlin would violate due process.
GLICKSTEIN, WARNER and SHAHOOD, JJ., concur.
NOTES
[1] Appellant argues that if this court finds that appellees were not subject to personal jurisdiction based on their personal contacts with Florida, then "this Court must consider that these Appellees are also responsible for their co-conspirators' acts in a conspiracy". Appellant did allege that:

The Defendants, Nutri Herb, Inc., Michael Connelly, Ted Keys, Michael Richter, Maxine Zitlin and Toby Widett have conspired to tortiously interfere with the Plaintiff's contractual and business relationships with its distributors.
However, appellant never specifically alleged that personal jurisdiction over Zitlin and Richter was proper based on the acts of the alleged coconspirators. Furthermore, at the hearing on the motion to dismiss, appellant never argued to the trial court that it was relying on the acts of the coconspirators as a basis for jurisdiction. It seems clear from the trial court's order that it never considered, or ruled on, whether Zitlin or Richter were subject to jurisdiction based on the acts of their alleged coconspirators. See Execu-Tech Business Systems, Inc. v. New OJI Paper Co., Ltd., 708 So.2d 599 (Fla. 4th DCA 1998) (adopting five part showing required to establish jurisdiction based on acts of co-conspirators).