MIAMI BREAKERS SOCCER CLUB,
INC., a Florida corporation,
Plaintiff,

v.

WOMEN'S UNITED SOCCER ASSOCI-
ATION, a Delaware limited liability
company, Women's Professional Soc-
cer, L.L.C., d/b/a Boston Breakers, a
Delaware limited liability company,
and PH Soccer Company, d/b/a Boston
Breakers, a Delaware limited liability
company, Defendants.

No. 01–1097–CIV.

United States District Court,
S.D. Florida,
Miami Division.

April 27, 2001.

Mark Evan Stein, David Kenneth Friedland, Lott & Friedland, Coral Gables, FL, for Miami Breakers Soccer Club, Inc., a Florida corporation, plaintiffs.

Marcos Daniel Jimenez–D'Clouet, Carlos Bruno Castillo, White & Case, Miami, FL Robert L. Raskopf, Jennifer L. Johnson, White & Case, New York City, for

Women's United Soccer Association, a Deleware limited liability company, Women's Professional Soccer, L.L.C. dba Boston Breakers, PH Soccer Company dba Boston Breakers, defendants.

## ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

KING, District Judge.

THIS CAUSE comes before this Court upon Defendants' Motion to Dismiss for Lack of Personal Jurisdiction filed April 3, 2001. Plaintiff filed a Response on April 10, 2001. Defendants filed a Reply on April 17, 2001. This Court heard oral arguments on Defendants' Motion and Plaintiff's responses thereto on April 20, 2001. Plaintiff also filed a Notice of Supplemental Authority on April 20, 2001. Defendants seek dismissal of the above-styled case under Federal Rules of Civil Procedure 12(b)(2).

### I. Background

Plaintiff Miami Breakers Soccer Club, Inc. ("Miami Breakers") filed this above-styled action on March 19, 2001 alleging (1) unfair competition under § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), (2) unfair competition under Florida common law and (3) dilution under section 495.151 of the Florida Statutes in connection with Defendants' purported infringing adoption and use of names and trademarks that are confusingly similar to Plaintiff's names and trademarks. On March 26, 2001, Plaintiff filed a Motion for Preliminary Injunction. The Court decided to consider first the issue of personal jurisdiction before considering the merits of Plaintiff's Preliminary Injunction Motion. (*See* April 13, 2001 Order.)

Plaintiff is a Florida corporation which operates a men's soccer team in the United Soccer League ("USL"). Defendant Women's Professional Soccer, L.L.C. ("WPS") d/b/a Boston Breakers is a Delaware limited liability company with its principal place of business as New York, New York. Defendant Women's United Soccer Association ("WUSA") is also a Delaware limited liability company with its principal place of business in New York, New York. Defendant PH Soccer Company d/b/a Boston Breakers ("Boston Breakers") is a Delaware limited liability company with its principal place of business in Boston, Massachusetts. Defendants WPS and WUSA were served in New York, New York. (*See* Return of Services, D.E. # 51, 52.) Defendant Boston Breakers was served in Massachusetts. (*See* Return of Service, D.E. # 28.) In its Complaint and responses, Plaintiff alleges that personal jurisdiction is based upon (1) the Defendants participation in the combine and draft in Boca Raton, Florida, (2) the Defendants participation in the Umbro Select All–Star Soccer Classic in Fort Lauderdale, Florida, (3) the Defendants meeting with the Plaintiff in Florida to discuss the names and trademarks dispute between the parties, (4) the Defendants operation of web sites, (5) the Defendants advertising in newspapers and (6) the Defendants planning for a women's soccer franchise in Orlando, Florida.

### II. Standard of Review

The determination of whether a court has personal jurisdiction over a nonresident party involves a two-part analysis. *See Cable/Home Communication Corp. v. Network Productions, Inc.,* 902 F.2d 829 (11th Cir.1990); *see also Venetian Salami Co. v. Parthenais,* 554 So.2d 499, 502 (Fla. 1989). First, the court must determine whether the applicable state statute governing personal jurisdiction is satisfied. Next, the court must determine whether the exercise of personal jurisdiction by the court comports with the due process clause of the Fourteenth Amendment. *See Future Tech. Today, Inc. v. OSF Healthcare Systems,* 218 F.3d 1247,1249 (11th Cir.

2000). The federal due process constitutional analysis requires that the nonresident has sufficient "minimum contacts" with the forum state so that "maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945); *see also Robinson v. Giarmarco & Bill, P.C.,* 74 F.3d 253, 256 (11th Cir.1996).

 A federal court when applying Florida's long arm statute must strictly construe the long arm statute as would the Florida Supreme Court. *See Oriental Imports and Exports, Inc. v. Maduro & Curiel's Bank, N.V.,* 701 F.2d 889, 890 (11th Cir.1983). "A plaintiff seeking to subject a nonresident defendant to jurisdiction of the court through the long-arm statute must do more than allege facts that show a possibility of jurisdiction." *Jet Charter Service, Inc. v. Koeck,* 907 F.2d 1110, 1112 (11th Cir.1990). If a plaintiff alleges personal jurisdiction, then it bears the initial burden of pleading facts to support personal jurisdiction over the defendant in its complaint. *See Future Tech. Today, Inc.,* 218 F.3d 1247,1249 (11th Cir.2000). The burden then shifts to the defendant after the plaintiff pleads sufficient facts to support a court exercising personal jurisdiction over a nonresident defendant. The defendant may by affidavits, testimony or other documents challenge the plaintiff's jurisdictional allegations. If the defendant is successful in challenging the plaintiff's assertions of personal jurisdiction, then the burden shifts back to plaintiff to substantiate its allegations of jurisdiction by affidavits, testimony or other documents. On a motion to dismiss, a court must accept the facts asserted by the plaintiff as true unless controverted by the defendant. *See United States Sec. & Exchange Comm'n v. Carrillo,* 115 F.3d 1540, 1542 (11th Cir. 1997).

## III. Discussion

### A. Florida Long–Arm Jurisdiction

 The relevant parts of the Florida's long arm statute involved in the case at bar provide that:

(1) Any person, whether or not a citizen or resident of this state, who personally or through an agent does any of the acts enumerated in this subsection thereby submits himself or herself and, if he or she is a natural person, his or her personal representative to the jurisdiction of the courts of this state for any cause of action arising from the doing of any of the following acts:

(a) Operating, conducting, engaging in, or carrying on a business or business venture in this state or having an office or agency in this state.

(b) Committing a tortious act within this state.

Section 48.193(1)(a)-(b) of the Florida Statutes. Specifically, Plaintiff asserts that personal jurisdiction exists over the Defendants under section 48.193(1)(a) of the Florida Statutes because they participated in the combine and draft from December 4 through December 11, 2000 in Boca Raton, Florida and planned for a WUSA franchise in Orlando, Florida. (*See* Pl.'s Response Mot. Dismiss at 8–9.) In response, Defendants argue that their participation in the combine and draft and plans for a franchise in Orlando cannot be considered sufficient business activities in Florida to subject them to personal jurisdiction. Defendants assert that they did not receive any pecuniary benefit from their limited contacts with Florida. Section 48.193(1)(a) of the Florida Statutes provides for personal jurisdiction when a nonresident "[o]perat[es], conduct[s], engag[es] in, or carr[ies] on a business or business venture in this state or having an office or agency in this state." To determine whether a

defendant conducts business or business activities in Florida, "[t]he activities of the [defendant] sought to be served ... must be considered collectively and show a general course of business activity in the State for pecuniary benefit." *Sculptchair, Inc. v. Century Arts, Ltd.,* 94 F.3d 623, 627–28 (11th Cir.1996) (quoting *Dinsmore v. Martin Blumenthal Associates, Inc.,* 314 So.2d 561, 564 (Fla.1975)). In *Sculptchair,* the court found that it lacked personal jurisdiction over three defendants because they did not "manufacture, [sell], lease, or solicit orders for chair covers or any other products in Florida.... [or] maintain no offices or agents in the state." Similarly, in the instant case, Defendants do not maintain any offices or agents nor do they sell products or services in Florida. Plaintiff does not present any evidence to show that Defendants have an office, agency or employees in Florida. More importantly, Defendants did not receive any financial benefit from any of their activities in Florida. Thus, Defendants' isolated and sporadic contacts with Florida viewed collectively do not amount to a general course of business activity for pecuniary benefit.

Next, Plaintiff asserts personal jurisdiction under section 48.193(1)(b) of the Florida Statutes because the alleged tortious acts—unfair competition and dilution—occurred in Florida. Plaintiff bears the burden of showing that *substantial aspects* of the alleged tortious conduct happened in Florida. *See Cable/Home Communication Corp.,* 902 F.2d 829, 857 (11th Cir.1990). Specifically, Plaintiff contends that Defendants (1) used their allegedly infringing names and trademarks for solicitation on their products over the Internet; (2) advertised their allegedly infringing names and trademarks in newspaper advertisements in Florida; and (3) used their allegedly infringing names and trademarks during the combine and draft in Florida. The gist of Plaintiff's argument is that Defen-

dants' alleged infringing conduct occurs in Florida since Plaintiff's customers in Florida are likely to be confused by Defendants' alleged infringing actions on the Internet, in newspaper advertisements and at the combine and draft. On the other hand, Defendants argue that they did not "commit a tortious act within this state" because their web sites are passive, their advertisements in the *Boston Globe* were not intended for publication and distribution in Florida and their use of the name "Boston Breakers" at the combine and draft are not significant aspects of the alleged tortious conduct to meet the requirement of section 48.193(1)(b) of the Florida Statutes that a substantial aspect of the alleged tort happened in Florida.

■ Defendants contend that their web sites are passive and not active as the Plaintiff asserts. Defendants submitted supporting evidence showing that Florida residents cannot and have not purchased merchandise directly from their web sites. A passive web site only makes information available to those interested in viewing the web site in foreign jurisdictions whereas an active web site allows for those interested in foreign jurisdictions to enter into contracts over the Internet with the defendant. *See Nida Corp. v. Nida,* 118 F.Supp.2d 1223, 1229 (M.D.Fla.2000); *see also Zippo Mfg. Co. v. Zippo Dot Com, Inc.,* 952 F.Supp. 1119, 1124 (W.D.Pa. 1997). To purchase items seen on their web site, a person would have to phone an order to the Defendants. He could not use the web site to place an order. Thus, because Florida residents cannot contract with the Defendants through their web sites to make purchases, the Court finds that Defendants' web sites are passive and the allegedly infringing names and trademarks displayed on the web sites are not substantial aspects of the purported tortious acts to confer personal jurisdiction under section 48.193(1)(b) of the Florida Statutes. The Plaintiff has failed to dem-

onstrate that Defendants' passive web sites meet the elements for a tort of unfair competition and dilution by declarations of Florida residents and non-Florida residents. In fact, none of Plaintiff's declarations show that a substantial part of any of the alleged tortious conduct or injury happened in Florida. *See generally, Posner v. Essex Ins. Co., Ltd.,* 178 F.3d 1209, 1217 (11th Cir.1999) (interpreting section 48.193(1)(b) of the Florida Statutes "to apply to defendants committing tortious acts outside the state that cause injury in Florida.").

 The *Boston Globe* is a newspaper of general circulation limited to Maine through New York. (*See* Aff. Ralph Gaboury ¶ 13.) Plaintiff did not produce any evidence to rebut Defendants' evidence demonstrating that the *Boston Globe* general circulation or advertisements were distributed in Florida, or that any Florida resident ever saw the Defendants' newspaper advertisements in Florida. Defendants' evidence established that the Women's United Soccer Association single advertisement in the *USA Today Newspaper,* a national newspaper distributed in Florida, did not contain the allegedly infringing names and trademarks. (*See* Kaler's Decl. ¶ 9.) Thus, the Defendants' advertisements in the Boston Globe and the *USA Today Newspaper* were not substantial aspects of Plaintiff's claims for unfair competition or dilution.

 Finally, Plaintiff alleges that the use of the alleged infringing names and trademarks by the Defendants during the combine and draft in Florida was substantial aspects of the torts of unfair competition and dilution. Defendants argue that the verbal use of the name "Boston Breakers" at the combine and draft cannot be

considered a substantial part of a tort of unfair competition under section 43(a) of the Lanham Act and common law or dilution under Florida law or a commercial interstate activity. Section 43(a) of the Lanham Act limits a cause of action for unfair competition for commercial interstate activities. *See Jellibeans, Inc. v. Skating Clubs of Georgia, Inc.,* 716 F.2d 833, 838 (11th Cir.1983). Defendants' actions with regards to use of the disputed names and trademarks at the combine and draft are not interstate commercial activities, nor are they substantial aspects of tortious conduct giving rise to claims against the Defendants.

## B. Federal Due Process

 The Court also concludes that the Defendants contacts with Florida are isolated and sporadic. Traditional notions of fair play would be violated by this Court exercising jurisdiction over the Defendants. In the Eleventh Circuit, a court when determining if the due process clause of the Fourteenth Amendment has been satisfied for personal jurisdiction should consider whether (1) the defendant purposefully avails himself or herself of the privilege of conducting activities within Florida; (2) the defendant's contacts with the forum state give rise to the cause of action; and (3) the defendant reasonably anticipated being subject to jurisdiction in Florida. *See Future Tech. Today, Inc.,* 218 F.3d 1247,1250–51 (11th Cir.2000). Based upon the facts alleged by the Plaintiff, this Court finds that Defendants' use of the allegedly infringing trademark at the draft and combine and the All-star game in Florida, operation of passive web sites with the alleged infringing names and trademarks, plans for nationally broadcast televised games in Florida[1] and the failed

---

**1.** Plaintiff argues that the planned nationally broadcast of at least four Boston Breakers soccer games on cable television constitute

substantial aspects of the alleged tortious conduct. Plaintiff relies on *Indianapolis Colts, Inc., et al. v. Metropolitan Baltimore Football*

attempt for a WUSA franchise in Orlando do rise to the level of minimum contacts with Florida to comport with the due process requirements of the Fourteenth Amendment. The facts of this case do not establish that the Defendants purposefully availed themselves of the protection and privileges of Florida laws or that they had a reasonable expectation of being subject to jurisdiction of a court in Florida.

In determining whether traditional notions of fair play and substantial justice will be served, a court may consider (1) the burden on the defendant, (2) the forum's state interest in adjudicating the dispute, (3) plaintiff's interest in obtaining convenient and effective relief, (4) the interstate judicial system's interest in obtaining the efficient resolution of the matter and (5) the shared interest of the several states in furthering fundamental substantive social policies. *See Future Tech. Today, Inc.* at 1251. Here, the burden is greater on the Defendants who are located in New York and Boston than on the Plaintiff who is located in Florida for adjudication of this case. The Plaintiff has failed to show that Florida has a greater interest in the adjudication of this instant controversy than either New York, Massachusetts or other states where all the parties have substantial contacts (e.g., jurisdiction where both USL and WUSA are located). Moreover, Plaintiff is not prejudiced by this Court finding that personal jurisdiction does not exist under Florida's long arm statute and the due process clause of the Fourteenth Amendment based upon the facts of the above-styled case since the dismissal here, is without prejudice to re-file where jurisdiction is proper.

## C. Attorney Fees and Costs

Defendants request attorney fees and costs incurred for defending the above-styled case under the Federal Rules of Civil Procedure 11 and/or 28 U.S.C. § 1927. (*See* Defs'. Mot. Dismiss at 3.) This Court does not find it appropriate to award attorney's fees and costs in the above-styled case.

## IV. Conclusion

Accordingly, after a careful review of the record, and the Court being otherwise fully advised, it is

ORDERED and ADJUDGED that Defendants' Motion to Dismiss be, and the same is hereby, GRANTED. The above-styled case is hereby DISMISSED without prejudice to be re-filed in the proper jurisdiction.

---

*Club, Limited Partnership, et al.,* 34 F.3d 410 (7th Cir.1994) for the proposition that its customers, fans and sponsors located in Florida are likely to be confused by the Boston Breakers national broadcasted games. However, this Court is not persuaded by Plaintiff's argument. Plaintiff has not demonstrated that the nationally broadcasted games will constitute a substantial aspect of the alleged tortious conduct. Plaintiff's argument is based on future actions. This Court must determine whether personal jurisdiction exists over the nonresident Defendants on the facts before it and not on the possibility of substantial aspects of a tort happening in the future. *See generally JB Oxford Holdings, Inc. v. Net Trade, Inc.,* 76 F.Supp.2d 1363 (S.D.Fla.1999).