**REXAM AIRSPRAY, INC. f/k/a Airspray International, Inc. Plaintiff,**

v.

**Helga ARMINAK and Arminak & Associates, Inc. Defendants.**

No. 06–61619CIV.

United States District Court, S.D. Florida.

Jan. 26, 2007.

Barry Lawrence Rothberg, Greenberg Traurig, Miami, FL, for Plaintiff.

John C. Carey, Allison Jeanne Cammack, Carey Rodriguez Greenberg & Paul LLP, Miami, FL, for Defendants.

### ORDER GRANTING MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

UNGARO–BENAGES, District Judge.

THIS CAUSE is before the Court upon the Verified Amended Complaint (D.E.# 17) and Motion for Temporary Injunction (D.E.# 4, 10/27/06). Defendants filed their Motion to Dismiss Plaintiff's Verified Amended Complaint for Lack of Personal Jurisdiction, for Failure to State a Claim, and Pursuant to the "First-filed Rule", on December 7, 2006 (D.E.# 32). Plaintiff responded to the Motion on December 20, 2006 (D.E.# 37) and Defendants filed their corrected reply on January 3, 2007 (D.E.# 53). The Defendants also filed an opposition to Plaintiff's request for a temporary injunction (D.E.12). The issues before this Court have been thoroughly briefed.

By way of introduction, Plaintiff Rexam Airspray, Inc. ("Airspray") is a Florida-based manufacturer of foam dispensers used in cosmetic packaging, among other products. Defendant Helga Arminak is the President of Arminak & Associates, Inc. ("Arminak, Inc."), a California-based provider of packaging, including pumps, for use in various cosmetic, beauty, personal care, automotive and cleaning products. On March 23, 1999, Airspray and Helga Arminak entered into an agreement pursuant to which Helga Arminak was to promote, market and sell Airspray's products in twelve western states. The agreement, as amended from time to time, contained, *inter alia*, non-compete and confidentiality provisions, and was re-

newable annually after its initial five-year term. In 2004, Arminak, Inc. replaced Helga Arminak as the contracting party.

On October 25, 2006, Airspray initiated this lawsuit by filing a verified complaint against Defendants alleging breach of contract, and requesting a declaratory judgment and injunctive relief with respect to the non-competition and confidentiality provisions contained in the agreement. Two days later, Airspray moved for entry of a temporary injunction enforcing the non-compete and confidentiality portions of the contract.

Defendants timely filed their response in opposition to the motion for temporary injunction. Subsequently, Airspray amended the complaint to add specific allegations of jurisdiction pursuant to Florida Statutes § 48.193(2). Defendants then moved to dismiss the Amended Complaint based on lack of personal jurisdiction, failure to state a claim, and based on the first filed rule.[1]

The Court noticed and convened an evidentiary hearing to resolve Defendants' motion to dismiss for lack of personal jurisdiction and Airspray's motion for temporary injunction on January 11, 2007. At the hearing, the Court heard the testimony of Helga Arminak and Robert Brands, President of Airspray.

Based on the following Findings of Fact and Conclusions of Law, this Court finds that it lacks personal jurisdiction over both Defendants, and therefore it must dismiss the action.

## FINDINGS OF FACT

### Background Facts

1. On March 23, 1999 Helga Arminak and Airspray entered into an agreement whereby Helga Arminak became an independent sales representative of Airspray for an exclusive territory that included California and eleven other Western States. (Am. Compl., ¶ 12 and Ex. A thereto.)

2. The contract became effective in May 1999 for an initial period of five years to be renewed automatically on an annual basis. (Am. Compl., ¶ 12 and Ex. A thereto.) The contract was amended in December 2000 and June 2004. The 2004 Amendment made the contract between Airspray and Arminak, Inc. (Am. Compl.Ex. B.)

3. The contract contains a confidentiality clause, a disclosure clause regarding improvements or modifications, and a non-compete clause. The alleged breach of these provisions forms the basis of Plaintiff's claims for breach of contract, injunction and declaratory relief. (Am. Compl. and Ex. A thereto.)

4. The non-compete clause states:

In consideration of the compensation to be paid to Helga Arminak under this Agreement, as well as the wide access Airspray grants to Helga Arminak to review and become familiar with Airspray's business, including certain valuable trade secrets and other Airspray-information, and the opportunity provided to Helga Arminak by Airspray to develop substantial relationships with

---

1. Prior to this action being filed, on September 22, 2006, Arminak, Inc. filed suit in California Superior Court ("the First Filed Action") for breach of contract and for declaratory judgment, seeking, inter alia, a declaration that the non-compete provision at issue is void and unenforceable. The First Filed Action was served on October 6, 2006. (11–9–06 Carey Decl., ¶ 2, Ex. A.) On November 8, 2006, a First Amended Complaint was filed in which Helga Arminak was joined as a co-plaintiff. Id. at ¶ 3, Ex. B.

Airspray's customers and potential clients in the Territory, Helga Arminak, as part of and ancillary to this Agreement, for a reasonable period of time following termination of this Agreement, for any reason directly or indirectly, by any means or device, for herself or on behalf of or in conjunction with any person, partnership or corporation, agrees not to:

(a) induce, entice or hire or attempt to hire any employee or authorised representative of Airspray; or

(b) compete in the Territory with Airspray or solicit in the Territory any customers of Airspray in the products and services provided by Airspray

The parties agree that a reasonable period of time, for the purposes of this paragraph shall be one year.

(Am.Compl.Ex. A, Art. 9.6.)

5. The contract also contains the following forum selection clause:

This agreement shall be construed under, governed by and the legal relations between the parties shall be determined by, the laws of the State of Florida. Any controversy, claim or dispute between the Parties arising out of or relating to this Agreement shall be submitted to any competent Court in the State of Florida judging in first instance.

(Am.Compl.Ex. A, Art. 10.)

### Jurisdictional Facts

6. Plaintiff alleges that "this Court has jurisdiction over the Defendants pursuant to § 48.193(2), Florida Statutes, as the Defendants are engaged in substantial and not isolated activity within Florida."[2] (Am.Compl., ¶ 7.)

7. In its Amended Complaint, Plaintiff asserts three specific facts which allegedly permit the exercise of "general jurisdiction" pursuant to § 48.193(2):(1) that Defendants are engaged in substantial business activity in Florida through an agent, K.G. International, Inc.; (2) that Defendants advertised in the October 2006 issue of a trade journal that was circulated in Florida; and (3) that Defendants maintain a website which includes a catalog of Defendants' products. (Am.Compl., ¶¶ 7, 27–28.)

8. Prior to the evidentiary hearing, Plaintiff submitted the Supplement Declaration of Barry Rothberg which identified three additional advertisements that ran in two nationally distributed trade journals in November and December, 2006. (Decl. Rothberg.)

9. Plaintiff also submitted the Affidavit of Odie Cernonok. The affidavit states that Mr. Cernonok is currently a Regional Sales Representative for Airspray and has served in that position since November 2004. (Aff. Cernonok ¶ 1.)

10. From 2003 until July 2006, Mr. Cernonok worked as a sales agent for Arminak, Inc., on a commission basis, while at the same time representing other companies, including Airspray. (Aff. Cernonok ¶ 3, 4.)

11. Mr. Cernonok's affidavit makes the following statements:

a. "During my times as a sales agent for Arminak, I traveled from Atlanta to Florida every six or seven weeks to meet with distributors and customers of Arminak & Associates, Airspray, and other companies."

b. "On January 25 and 26, 2005, I attended a sales meeting at Rexam

---

**2.** Plaintiff does not allege that specific jurisdiction exists under Fla. Stat. § 48.193(1), and thus the Court must only analyze whether general jurisdiction under § 48.193(2) is established.

Airspray's office in Pompano Beach, Florida. Helga Arminak was also in attendance at that meeting." (Aff. Cernonok ¶¶ 5, 6.)

12. Mr. Cernonok did not testify at the hearing. (See Hr'g Tr.)

13. Based on the testimony of Helga Arminak at the hearing, which the Court finds to be more credible than Mr. Cernonok's affidavit, Mr. Cernonok did not conduct business in Florida on behalf of the Defendants.

14. Specifically, Mr. Cernonok represented Arminak, Inc. as an independent sales representative in Georgia, Tennessee, North Carolina and South Carolina, but *not* in Florida. (Arminak Test. Hr'g Tr. 5–9.)

15. Not only did Helga Arminak not direct Mr. Cernonok to travel to Florida on behalf of Arminak, Inc., but Mr. Cernonok never sold any Arminak, Inc. products to any customer or distributor in Florida. He was paid commissions on two sales, one in South Carolina, and one in Atlanta, Georgia. (Id.)

16. Helga Arminak is a life-long California resident and the president of Arminak, Inc. (12–6–06 Arminak Decl. at ¶¶ 2–3.)

17. Ms. Arminak conducts no personal business activity in Florida. (Id. at ¶ 4.)

18. All business activity conducted by Ms. Arminak is made through, and on behalf of, Arminak, Inc. (Id.)

19. Ms. Arminak does not own or lease any property in Florida, operate or maintain any facilities in Florida, own any bank accounts in Florida, have an office or employees in Florida, or have telephone numbers in Florida. (Id. at ¶ 5.)

20. Ms. Arminak is not qualified, registered or licensed to do business in Florida. (Id.)

21. Arminak, Inc. replaced Ms. Arminak as the contracting party in a 2004 amendment. (Am.Compl., ¶¶ 18, 40.)

22. Arminak, Inc. is a California corporation with its principal, and sole, place of business in California. (11–9–06 Arminak Decl., ¶ 3.)

23. Arminak, Inc. does not own or lease any property in Florida. (12–6–06 Arminak Decl., ¶ 6.)

24. Arminak, Inc. does not operate or maintain any facilities in Florida, own any bank accounts in Florida, have offices or employees in Florida, or have telephone numbers in Florida. (Id.)

25. Arminak, Inc. is not qualified, registered or licensed to do business in Florida. Id. Arminak, Inc. does not conduct substantial business activity in Florida. (Id. at ¶ 7.)

26. The percentage of Arminak, Inc.'s yearly sales to customers located in Florida constitutes about one-third of one percent (0.0033) of Arminak, Inc.'s total sales. (Id. at ¶ 10.)

27. After entering the contract in 1999, Helga Arminak, either on her own behalf, or as President of Arminak, Inc. maintained frequent email contact along with weekly phone contact with Robert Brands and other employees of Airspray in their Pompano Beach, Florida office. (Brands Test. Hr'g Tr. 14.)

28. Airspray sent sales leads and product samples to Defendants from the Pompano Beach offices of Airspray. (Brands Test. Hr'g Tr. 15.)

29. Helga Arminak toured Airspray's manufacturing facility in Pompano Beach and traveled to Florida as often as two times per year for sales meetings. She also attended two trade shows in Miami. Over the approximately six-year course of the parties' relationship, Ms. Arminak

made around eight trips to Florida related to sales of Airspray's products, and may have traveled to Florida on behalf of other clients or on her own a couple of times since mid–1999. (Brands Test. Hr'g Tr. 16.)

30. Airspray printed letterhead for Ms. Arminak and Arminak, Inc. so they could send letters on behalf of Airspray. Airspray also provided brochures to distribute to customers. The brochures were not personalized with contact information for Ms. Arminak or Arminak, Inc. (Brands Test. Hr'g Tr. 37.)

31. During the contract period, Ms. Arminak and Arminak, Inc. sold packaging products for companies other than Airspray, as permitted by the terms of the contract.[3] (Brands Test. Hr'g Tr. 13–14.)

32. The advertisements identified in paragraph 27 of the Amended Complaint and the Declaration of Barry Rothberg were placed by Arminak, Inc. and ran in the October, November, and December 2006 issues of Spray Technology and Marketing Magazine, and the November 2006 issue of Household and Personal Products Industry ("Happi") Magazine, trade publications with national, and international, distribution. (12–6–06 Arminak Decl. ¶ 11.)

33. No purchase of any Arminak, Inc. product by a Florida-based customer is attributable to these advertisements. (Id.)

34. The website at http://www.arminak-associates.com identified in paragraph 28 of the Amended Complaint is operated by Arminak, Inc. (Id. at ¶ 12.)

35. The website is passive and informational only, and does not allow a prospective customer to purchase Arminak, Inc. products online. (Id. at ¶ 12; 12–6–06 Carey Decl., ¶ 2, Composite Ex. A.)

36. To place an order, a person would have to contact Arminak, Inc. at its California office by telephone or in writing. (12–6–06 Arminak Decl., ¶ 12.)

37. K.G. International, Inc. ("KGI") is not an affiliate or subsidiary of Arminak Inc. (Id. at ¶ 9.) It is merely a customer of Arminak, Inc. (Id.)

38. KGI is an independent company that maintains its own facilities, distributes its own products through its own sales organization, maintains its own accounts, and hires and pays its own employees. (Id. at ¶ 8.)

39. KGI has a separate corporate existence of its own. (Id. at ¶ 8–9.) KGI does not function solely to achieve the purposes of Arminak, Inc. KGI is therefore not a "mere instrumentality" of Arminak, Inc.

## CONCLUSIONS OF LAW

### Jurisdictional Legal Standard

1. As a threshold matter, this Court must first determine whether it has personal jurisdiction over the Defendants. Therefore, even where a preliminary injunction has been requested, "the court must first address the jurisdictional dispute." *JB Oxford Holdings, Inc. v. Net Trade, Inc.*, 76 F.Supp.2d 1363, 1364 (S.D.Fla.1999). *See also Miami Breakers Soccer Club, Inc. v. Women's United Soccer Ass'n*, 140 F.Supp.2d 1325, 1327 (S.D.Fla.2001) ("The Court decided to first consider the issue of personal jurisdiction before considering the merits of Plaintiff's Preliminary Injunction Motion.").

2. In a diversity action, a federal court may exercise personal jurisdiction over a non-resident defendant only to the extent permitted by the long-arm statute of the

---

**3.** Arminak, Inc. sells hundreds of types of products supplied by several hundred differ-

ent manufacturers. (11–09–06 Arminak Decl. ¶ 23.)

forum state. *See Oriental Imports and Exports, Inc. v. Maduro & Curiel's Bank, N.V.,* 701 F.2d 889, 890 (11th Cir.1983). The Florida long-arm statute, Fla. Stat. § 48.193, is strictly construed and the party invoking jurisdiction has the burden of pleading and proving facts which clearly justify the exercise of personal jurisdiction. *Id.; see also Miami Breakers,* 140 F.Supp.2d 1325, 1328 ("If a plaintiff alleges personal jurisdiction, then it bears the initial burden of pleading facts to support personal jurisdiction over the defendant in its complaint.").

3. To subject a defendant to personal jurisdiction in Florida, a plaintiff must first make a *prima facie* showing that jurisdiction exists by presenting enough evidence to withstand a motion for directed verdict. *See Response Reward Sys. v. Meijer, Inc.,* 189 F.Supp.2d 1332, 1335 (M.D.Fla.2002). If a plaintiff pleads enough facts to state a prima facie basis for personal jurisdiction, the burden then shifts to the defendant to challenge plaintiff's allegations by declarations or other pleadings. *Id.* If the defendant successfully challenges the plaintiff's assertions, then the plaintiff must affirmatively support its jurisdictional allegations with evidence and may not merely rely upon the factual allegations set forth in the complaint. *Future Tech Int'l, Inc. v. Tae II Media, Ltd.,* 944 F.Supp. 1538, 1555 (S.D.Fla.1996). If a court determines that it has no personal jurisdiction over a defendant, then the defendant has "an unqualified right to have an order granting its motion to dismiss." *Posner v. Essex Ins. Co.,* 178 F.3d 1209, 1214 n. 6 (11th Cir.1999).

4. Florida Statutes § 48.193(2), the sole basis on which Airspray relies for the assertion of personal jurisdiction over the Defendants, provides:

(2) A defendant who is engaged in substantial and not isolated activity within this state, whether such activity is wholly interstate, intrastate, or otherwise, is subject to the jurisdiction of the courts of this state, whether or not the claim arises from that activity.

Fla. Stat. 48.193(2).

5. The breadth of Florida's long-arm statute is a question of Florida law. *Oriental Imports,* 701 F.2d at 890. Therefore, the Court is required to analyze the statute as would the Florida Supreme Court. *Id.* at 890–91. Additionally, the statute is to be strictly construed. *Id.* at 891.

 6. Florida courts hold that "substantial and not isolated activity" means "continuous and systematic general business contact" with Florida. *Autonation, Inc. v. Whitlock,* 276 F.Supp.2d 1258, 1262 (S.D.Fla.2003) (citing *Woods v. Nova Cos. Belize Ltd.,* 739 So.2d 617, 620 (Fla. 4th Dist.Ct.App.1999)). The "continuous and systematic" contacts requirement exceeds the constitutional due process requirement of "minimum contacts." *Id.* Because § 48.193(2) requires this high threshold, if a defendant's activities meet the statutory requirements of § 48.193(2), the minimum contacts standard is also satisfied. *Woods,* 739 So.2d at 620.

**This Court Lacks Personal Jurisdiction Over Defendants**

 7. Although the agreement between Helga Arminak and Airspray contains a forum selection clause requiring initiation of suit in Florida, under the Florida long-arm statute, a forum selection clause as a matter of Florida law is insufficient in and of itself to confer personal jurisdiction over a non-resident defendant. *See McRae v. J.D./M.D., Inc.,* 511 So.2d 540, 542 (Fla.1987); *see also Johns v. Taramita,* 132 F.Supp.2d 1021, 1028 (S.D.Fla. 2001); *Am. Investors Life Ins. Co. v. Webb*

*Life Ins. Agency, Inc.,* 876 F.Supp. 1278 (S.D.Fla.1995). As the Florida Supreme Court held in *McRae,* a forum selection clause designating Florida as the forum cannot operate as the basis for a court in Florida to exercise personal jurisdiction over an objecting non-resident defendant. *McRae,* 511 So.2d at 542. Instead, the party asserting jurisdiction must separately establish one of the enumerated grounds under the long-arm statute wholly apart from the forum selection clause. *Id.* Therefore, the Court examines whether Plaintiff has satisfied its burden of showing jurisdiction under subsection (2) of § 48.193, Florida's long-arm statute.

8. Plaintiff makes three specific allegations in its Amended Complaint which allegedly permit the exercise of "general jurisdiction" pursuant to § 48.193(2):(1) that Defendants are engaged in substantial business activity in Florida through an agent, K.G. International, Inc.; (2) that Defendants advertised in the October 2006 issue of a trade journal that was circulated in Florida; and (3) that Defendants maintain a website which includes a catalog of Defendants' products. (Am.Compl., ¶¶ 7, 27–28.) Plaintiff submitted additional allegations by filing the supplemental affidavits of Odie Cernonok and Barry Rothberg, which identified Mr. Cernonok as an additional agent of Defendants engaging in business activity in Florida and presented three additional advertisements for Arminak, Inc., that appeared in trade publications. (Aff. Cernonok; Decl. Rothberg.) To the extent these allegations are supported by the evidence, they are not sufficient to bring Defendants within Fla. Stat. § 48.193(2).

9. First, Plaintiff claims that the activities of KGI in Florida establish general jurisdiction over Defendants in Florida. This argument is not supported by the evidence or the law. Typically, this kind of argument arises in the context of the corporate parent/subsidiary relationship. Most cases in this arena have addressed the question of whether a foreign corporation is subject to the general jurisdiction of the state because of the activities of a subsidiary corporation located in Florida. *See Meier v. Sun Int'l Hotels, Ltd.,* 288 F.3d 1264, 1272–74 (11th Cir.2002); *General Cigar Holdings v. Altadis, S.A.,* 205 F.Supp.2d 1335, 1343–44 (S.D.Fla.2002). In the instant case, however, KGI is a customer of Arminak Inc., not an affiliate or a subsidiary.

10. Generally, a foreign parent corporation is not subject to the jurisdiction of a forum state merely because a subsidiary is doing business there. *See Meier,* 288 F.3d at 1272. However, "if the subsidiary is merely an agent through which the parent company conducts business in a particular jurisdiction or its separate corporate status is formal only and without any semblance of individual identity, then the subsidiary's business will be viewed as that of the parent. . . ." *Id.*

11. In *General Cigar Holdings,* the court distinguished *Meier* when it held that "[w]hat is required for jurisdiction based on agency is not some control but 'operational control' by a parent over a subsidiary." *General Cigar Holdings,* 205 F.Supp.2d at 1344. In that case, although the court stated that there was a "close working relationship" and the subsidiary "conduct[ed] its business under the watchful eye of its parent," ultimately the court found that a sufficient agency relationship did not exist for purposes of general jurisdiction. *Id.* The court based its conclusion on the fact that the subsidiary owned and maintained its own production facilities, distributed its own products through its own sales organization, maintained its own accounts, and paid its own employees. *Id.* The relationship between the parent and

subsidiary was thus deemed inadequate to warrant general jurisdiction over the non-resident defendant. *See also. Kozial v. Bombardier–Rotax GmbH,* 129 Fed.Appx. 543, 547 (11th Cir.2005) ("Even in cases involving a parent and its subsidiary, courts are reluctant to impute the activities of the subsidiary to the parent when some semblance of independence has been maintained.")

12. In view of these applicable legal authorities, there is no basis whatsoever to conclude that the activities of KGI in Florida satisfy the general jurisdiction provision of the Florida long-arm statute required for the exercise of jurisdiction over Defendants. First, Helga Arminak, individually, transacts no business with or through KGI. Second, as to Arminak, Inc., KGI is not an affiliate or subsidiary of Arminak Inc.; KGI is an independent company that maintains its own facilities, distributes its own products through its own sales organization, maintains its own accounts, and hires and pays its own employees. KGI is merely a customer of Arminak, Inc. Thus, KGI has a separate corporate existence of its own and Arminak, Inc. does not exercise "operational control" as required by governing law for general jurisdiction under an agency theory. *See General Cigar Holdings,* 205 F.Supp.2d at 1344.

13. Moreover, Arminak, Inc.'s sales to customers in Florida such as KGI amount to less than 1% of its total sales. By comparison, courts confronting much higher percentages of forum-state sales have nonetheless concluded that general jurisdiction does not exist. *See Horizon Aggressive Growth,* 421 F.3d at 1167 (5% Florida sales; no general jurisdiction); *Stairmaster Sports/Medical Prod. Inc.,* 916 F.Supp. 1049, 1052–53 (W.D.Wash. 1994), *affirmed,* 78 F.3d 602 (Fed.Cir.1996) (3% forum-state sales; no general jurisdic-

tion); *Baker v. Carnival Corp.,* 2006 WL 3360418, at *4 (S.D.Fla. Nov.20, 2006) (1.5% Florida sales; no general jurisdiction).

14. With respect to Odie Cernonok's alleged status as an agent of Defendants, any inference that Mr. Cernonok acted on behalf of Defendants when he traveled to Florida to meet with customers is not supported by the record developed at the evidentiary hearing. Helga Arminak testified that Mr. Cernonok did not represent Arminak, Inc. in Florida. The unrefuted evidence shows that Mr. Cernonok represented multiple companies, and his sales visits to Florida were unrelated to his work for Arminak, Inc.

15. The second ground asserted by Plaintiff to justify exercising general jurisdiction over Defendants are the four advertisements placed by Arminak, Inc. in two trade publications with national (in fact, international) distribution. This is simply not sufficient as a matter of law to confer general jurisdiction. First, the advertisements are not attributable to Helga Arminak individually. Second, as to Arminak, Inc., as discussed above, in order for general jurisdiction to exist, a defendant's contacts with Florida must be "especially pervasive and substantial" to satisfy § 48.193(2). *General Cigar Holdings,* 205 F.Supp.2d at 1343. The alleged advertisements do not reach this threshold.

16. Advertising can be a component of continuous and systematic general business activity when it is part of a strategy designed to generate product sales in Florida. *See Travel Opportunities of Ft. Lauderdale, Inc. v. Walter Karl List Management, Inc.,* 726 So.2d 313, 315 (Fla. 4th App. Dist.1999) (broadcasting infomercials on 48 Florida cable channels to market to in-state consumers satisfies Florida's general jurisdiction statute, whereas merely placing ads in an international journal does

not). In other cases, courts have examined advertisements in the context of minimum contacts, an analysis requiring comparatively less in the way of contacts than Fla. Stat. § 48.193(2). In such a case, the Eleventh Circuit stated, "[M]erely advertising in magazines of national circulation that are read in the forum state is not a significant contact for jurisdictional purposes. . . . Otherwise a business that advertised in a national magazine would be subject to jurisdiction in virtually every state. While these contacts count, they do not count for much." *Lawson Cattle & Equip., Inc. v. Pasture Renovators, LLC,* 139 Fed.Appx. 140, 143 (11th Cir.2005). In *Northwestern Aircraft Capital Corporation v. Stewart,* 842 So.2d 190, 196 (Fla. 5th Dist.App.2003), after the appellate court determined that the long-arm statute had been satisfied by other means,[4] it then determined that defendants' use of focused national advertisements to reach its business consumer base in Florida by advertising flights between Miami and Boston contributed to defendants minimum contacts with the state. By contrast, Defendants placement of four advertisements in trade journals of national and international distribution were neither shown to have been directed to Florida businesses nor shown to have resulted in any sales to Florida businesses. Thus, the advertisements do not, as a matter of law, serve to demonstrate that the Defendants are engaged in systematic and continuous business in Florida as required by Fla. Stat. § 48.193(2).

■ 17. Plaintiff also alleges that Arminak, Inc.'s website provides a basis for this court to exercise general jurisdiction over Defendants. Like the issue of adver-

tisements discussed above, a website is not well-suited to serve as a basis for general jurisdiction. As the court stated in *Baker v. Carnival Corp.,* 2006 WL 3360418, *4 (S.D.Fla. Nov.20, 2006):

> Under the *Zippo* test, it is possible for a Web site to be very interactive, but to have no quantity of contacts. In other words, the contacts would be continuous, but not *substantial.* This is untenable in a general jurisdiction analysis. As one court has noted, the *Zippo* test "is not well adapted to the general jurisdiction inquiry, because even repeated contacts with the forum residents by a foreign defendant may not constitute the requisite substantial, continuous and systematic contacts required for a finding of general jurisdiction. . . ."

(quoting *Lakin v. Prudential Securities, Inc.,* 348 F.3d 704, 712 (8th Cir.2003)) (emphasis in original).

18. Not only is the Plaintiff's reliance on the website ill-suited to provide a basis for general jurisdiction, the website at issue is "passive" and therefore cannot possibly create general jurisdiction. "A passive web site only makes information available to those interested in viewing the web site in foreign jurisdictions whereas an active web site allows for those interested in foreign jurisdictions to enter into contracts over the Internet with the defendant." *Miami Breakers,* 140 F.Supp.2d at 1329–30. *See also Zippo Mfg. Co. v. Zippo Dot Com. Inc.,* 952 F.Supp. 1119, 1124 (W.D.Pa.1997).

19. In this case, Plaintiff acknowledges that the website does not allow direct contracting. (D.E. # 18 at 7.) Florida residents cannot purchase merchandise directly from Arminak, Inc's web site.

---

4. The Court also found that the airline had "systematic and continuous" contacts with Florida because it operated flights from Florida, purchased services in Florida and main-

tained service contracts for airplane repair in Florida. *Northwestern Aircraft,* 842 So.2d at 195.

(Arminak Decl., ¶ 12; Carey Decl., ¶ 2, Composite Exhibit A.) To purchase items identified on Arminak, Inc.'s website, a person would have to send in an order to Arminak, Inc. at its California office either by telephone or in writing. (Arminak Decl., ¶ 12.) Because Florida residents cannot contract with Arminak, Inc. through the website to make purchases, the web site is "passive" and is insufficient to confer jurisdiction. *Miami Breakers*, 140 F.Supp.2d at 1329. Furthermore, with respect to Helga Arminak individually, it is not her website, and thus does not provide a basis for jurisdiction over her.

■ 20. Citing *Achievers Unlimited, Inc. v. Nutri Herb, Inc.*, 710 So.2d 716 (Fla.Dist.Ct.App.1998), Plaintiff also argues that Defendants' mere business relationship with Airspray subjects Defendants to this Court's general jurisdiction. As a threshold matter, this argument is without merit, because it is well settled that a plaintiff's contacts with the forum cannot be imputed to defendants. *Wallack v. Worldwide Machinery Sales, Inc.*, 278 F.Supp.2d 1358, 1370 (M.D.Fla.2003). It is also well settled that a defendant is not subject to jurisdiction in Florida just by having a contractual relationship with a Florida based company. *Id.* at 1366.

21. Plaintiff's reliance on *Achievers Unlimited* is unavailing for additional reasons. First, Plaintiff incorrectly asserts that Defendants acted as a "distributor" for Airspray in order to more closely draw an analogy to the facts in *Achievers Unlimited*. However, the factual record in this case is distinct. First, Defendants did not act as a distributor, but rather as a non-exclusive independent sales representative. Defendants made sales on behalf of Airspray (as well as others) in the territory, but Airspray's products were shipped directly to customers—Defendants did not warehouse or distribute Airspray's products. In this sense alone, Defendants contacts with Airspray as an independent sales representative have been less than those of the *Achievers Unlimited* defendant. *See Achievers Unlimited*, 710 So.2d at 720. Moreover, the defendant in *Achievers Unlimited* had significant subsequent involvement as a distributor for a second Florida company, resulting in the production of a significant amount of printing work by the Florida company. *Id.* There is no evidence in the record that Defendants have developed a significant relationship with any additional Florida companies. Furthermore, there is no evidence that Airspray engaged other Florida companies for substantial printing or other services on behalf of Defendants. Robert Brands testified that the only material developed specifically for Defendants was some Airspray letterhead. Accordingly, Plaintiff has failed to sustain its burden of establishing facts sufficient to warrant the exercise of personal jurisdiction.

22. As discussed, the facts at issue in *Achievers Unlimited* are not analogous to those actually present here. More pertinent and analogous is the recent decision of the Northern District of Florida in *Mold–Ex, Inc. v. Michigan Tech. Reps.*, No. 304–CV–307, 2005 WL 2416824, at *5 (N.D.Fla. Sept. 30, 2005). In *Mold–Ex*, the court appropriately distinguished *Achievers Unlimited* as follows:

> The contacts by MTR in the instant case are significantly less than those in *Achievers* and *Autonation*. In *Achievers*, the defendant had been a distributor of the plaintiff for several years, ordered products from the plaintiff to be shipped to her from Florida; operated a distributorship for plaintiff in another state; and later became a distributor for another Florida company. In *Autonation*, the defendant had previously worked for

the plaintiff in Florida; had attended meetings in Florida in connection with his job with plaintiff; and most significantly, received direction and instruction from plaintiff regarding his work in Georgia as well as job-related paperwork for his execution. *In comparison, MTR's only contact with the State of Florida was its long-term contractual relationship (entered into out of state) with a Florida plaintiff which required it to find buyers for the plaintiff in markets other than Florida and to service those out of state relationships from Michigan. These contacts are far too attenuated to support a finding of continuous and systematic contacts with the State of Florida under § 48.193(2).* *Id.* (Emphasis added.) Here, Defendants' contractual relationships were also entered into out-of-state with a Florida plaintiff. Here, too, Helga Arminak and Arminak, Inc. both found buyers for the plaintiff in markets other than Florida and serviced those out of state relationships from California. Thus, just like in *Mold–Ex,* these contacts are "far too attenuated" to support a finding of continuous and systematic contacts with the State of Florida under § 48.193(2). Therefore, there is no personal jurisdiction over the Defendants.

23. Finally, Plaintiff argues that even if the various jurisdictional facts (including the forum selection clause) are not on their own sufficient to establish continuous and systematic general business contact, taken together, the sum of these parts somehow confers jurisdiction under the long-arm statute, Fla. Stat. § 48.193(2). The Court does not agree with this argument in two respects. First, the Court submits that is has measured Defendants activities together, as it has separately. The collective activities (Defendants' business relationship with Airspray, occasional visits to Florida on behalf of Airspray, sales in Florida of less than 1% of Arminak, Inc.'s

total sales, placement of four advertisements in national trade journals, and a passive website) do not establish continuous and systematic general business contact in Florida. Secondly, aggregating the facts does not somehow catapult Defendants' activities over the bar to satisfy Florida's general jurisdiction long-arm statute (with the forum selection clause as the trigger). Florida law is clear that without an independent grounds for jurisdiction under the long-arm statute, a forum selection clause does not confer jurisdiction over a defendant. *McRae,* 511 So.2d at 542. Moreover, the aggregation argument seems to runs counter to the directive that the Florida long-arm statute, Fla. Stat. § 48.193, be strictly construed. *See Oriental Imports,* 701 F.2d at 890.

24. In this case the Plaintiff simply did not establish sufficient contact between Defendants and Florida in order to satisfy Florida's long-arm statute. Because "general jurisdiction allows a court to exercise jurisdiction over any type of suit whatsoever, Florida requires that the contacts must be especially pervasive and substantial to satisfy § 48.193(2). Accordingly, § 48.193(2) provides courts with general jurisdiction only over a defendant who has 'substantial and not isolated' contacts with Florida." *General Cigar Holdings,* 205 F.Supp.2d at 1343 (quoting Fla. Stat. § 48.193(2)) (emphasis added). The facts alleged in the Amended Complaint and further developed at the evidentiary hearing do not constitute continuous and systematic general business contact by Defendants with the state of Florida. Accordingly, Plaintiff has not satisfied Florida's long-arm statute for the exercise of personal jurisdiction and Defendants have an "unqualified right" to an order dismissing this case. *Posner,* 178 F.3d at 1214 n. 6.

## CONCLUSION

For these reasons, the Court concludes that Defendants have not engaged in such "substantial and not isolated activity" within this state so as to be subject to general jurisdiction pursuant to Florida Statutes § 48.193(2). Accordingly, it is hereby

ORDERED AND ADJUDGED that Defendants' Motion to Dismiss for Lack of Personal Jurisdiction is GRANTED.